# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RAYMOND L. ALBERTH,

    Plaintiff,

  v.                                                   Case No. 19-CV-62

SOUTHERN LAKES PLUMBING &
HEATING, INC. and SCOTT R. PLUCINSKI,

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S
## MOTION FOR ATTORNEY'S FEES

Raymond Alberth sued his former employer, Southern Lakes Plumbing & Heating, Inc. ("Southern Lakes"), and its owner, Scott R. Plucinski, for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Compl., Docket # 1.) At summary judgment, I determined that there was an ERISA plan in place with regard to the life insurance policy that was purchased and owned by Plucinski insuring Alberth. I also determined that the defendants, in failing to provide a copy of the life insurance policy to Alberth, violated § 502(a)(1)(A). However, I determined that three issues remained for trial: (1) whether the plan had a cash value payout option; (2) whether the cash value benefit continued after the insured's employment ended; and (3) what, if any, penalty should be assessed against the defendants for violation of § 502(a)(1)(A). A trial to the Court was held on November 19, 2020.

In a decision and order following the court trial, I found that the life insurance policy at issue had a cash value payout option that vested after five years of employment with

Southern Lakes and that the evidence supported Plucinski's intention for the benefit to survive the employee's termination of employment. (Docket # 68 at 8.) Because Alberth worked for Southern Lakes for more than five years after the effective date of his policy, I found that the policy vested and Alberth was entitled to the cash value of the policy in the amount of $32,048.81. (*Id.*) In addition, Alberth was awarded $8,700.00 in statutory penalties and $2,778.99 in prejudgment interest. (*Id.* at 8–12.)

Currently before me is Alberth's motion for attorney's fees under 29 U.S.C. § 1132(g)(1). (Docket # 71.) For the reasons explained below, Alberth's motion is granted.

## LEGAL STANDARD

Alberth moves for $62,775.00 in attorney's fees and costs incurred in prosecuting this ERISA case under 29 U.S.C. § 1132(g)(1). Defendants oppose Alberth's fee request, arguing that Alberth failed to demonstrate that his position was substantially justified. (Docket # 77.)

ERISA provides that courts may award attorney's fees to either party in the court's discretion:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). In *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), the Supreme Court stated that a fee claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g)(1). *Id.* at 255. "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victor[y], but does satisfy it if the court can fairly call the outcome of the litigation some

success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* (internal quotations and citations omitted). Before *Hardt*, the Seventh Circuit offered two, related tests for determining when an award of attorney's fees was appropriate under ERISA: (1) the five factor test and (2) the substantial justification test. *Temme v. Bemis Co.*, 762 F.3d 544, 549 (7th Cir. 2014). Under the five factor test, the court considers the following five factors in deciding whether to award attorney's fees:

> (1) the degree of the offending parties' culpability; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1090 (7th Cir. 2012). Under the substantial justification test, the court simply asks whether the position of the party against whom the fees are sought was "substantially justified." If so, no fees were awarded. *Temme*, 762 F.3d at 549.

The Seventh Circuit has declined to decide whether *Hardt* abrogates the two tests, but notes that no circuit court since *Hardt* has abandoned its five factor test. *Id.* at 550. The *Temme* court noted that two approaches have developed since *Hardt* to incorporate the *Hardt* Court's "some degree of success" principal into the tests: (1) *Hardt* defines a threshold of eligibility for a fee award, then the court uses the five factors to determine whether an award is appropriate and (2) assessing whether a party achieved some degree of success on the merits of its claim is the *only* factor a district court *must* account for, though a district court may still consider the other factors, as before. *Id.* The Seventh Circuit, however, has

3

affirmed the use of both tests post-*Hardt*, *id.*, and has stated that, whether considering the five factor test or the substantial justification test, "[t]he bottom line question is this—was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Raybourne*, 700 F.3d at 1090.

## ANALYSIS

*1.     Whether an Award of Attorney's Fees is Warranted*

The parties do not dispute that Alberth achieved some degree of success on the merits of his claims. They propose, however, different approaches for further consideration of the appropriateness of an attorney's fees award. In his initial brief, Alberth argues that because he achieved some degree of success on the merits of his claims, he is entitled to his reasonable attorney's fees, without addressing the five factors. (Docket # 72.) The defendants, on the other hand, argue that Alberth is not entitled to attorney's fees because their position was substantially justified; but argue in the alternative that the five factor test weighs in favor of denial of attorney's fees. (Docket # 77 at 2–4.)

Neither party's approach properly encapsulates the case law. Whether a claimant achieved some degree of success on the merits is a threshold question. In other words, a claimant is not even eligible for fees under § 1132(g)(1) *unless* he achieved some degree of success on the merits. *See Hardt*, 560 U.S. at 255 n.8 ("We do not foreclose the possibility that once a claimant has satisfied this requirement [i.e., achieving some degree of success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors . . . in deciding whether to award attorney's fees."). Alberth undoubtedly achieved some degree of success on the merits and thus is eligible for an award

of attorney's fees. My analysis, however, does not end there. I now turn to the five factors to assess whether a grant of attorney's fees is indeed warranted in this case.

I conduct my analysis of the five factors against the backdrop of ERISA's purpose in awarding attorney's fees. Again, whether to award attorney's fees under ERISA is discretionary—"It does not follow that whoever wins, plaintiff or defendant, is entitled to attorney's fees as a matter of course under section 1132(g)(1)." *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984), *overruled on other grounds by McCarter v. Ret. Plan For Dist. Managers of Am. Fam. Ins. Grp.*, 540 F.3d 649 (7th Cir. 2008). The Seventh Circuit found that § 1132(g)(1) created a "modest" presumption in favor of awarding reasonable attorney's fees to the winning party. *Id.* at 830. The court also found, however, that attorney's fees under ERISA are neither punitive nor intended to encourage meritorious litigation, unlike the fees allowed under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988. *Id.* at 828–830 ("[N]or do pension plan participants and beneficiaries constitute a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority."). Rather, § 1132(g)(1) allows the court flexibility to award attorney's fees when the specific circumstances of the case warrant, as guided by the five factors. *Id.* at 828.

The first, fourth, and fifth factors address the interrelated question of the offending party's litigation position, or whether the position was substantially justified. *See Temme*, 762 F.3d at 551. The first factor is the degree of the offending party's culpability, often framed as the degree of the offending party's bad faith. *Raybourne*, 700 F.3d 1076 at 1090 and n.6. The fourth factor, the benefit conferred on members of the plan as a whole, is "an important consideration in evaluating the merits of the plaintiff's case"—factor five. *Bittner*, 728 F.2d

at 829. While a "losing" position may still be substantially justified, the relevant inquiry is the party's posture during the case as a whole. *Temme*, 762 F.3d at 551.

In this case, the defendants argue that their position was substantially justified because the agreement at issue was oral rather than written; thus, they did not take a position that contradicted existing written documents. (Docket # 77 at 4.) They argue that even though the Court found Plucinski's testimony not credible, that does not equate to a frivolous litigation position. (*Id.*) Alberth argues that both the Court's finding on summary judgment that defendants violated the statute by failing to provide policy information and the Court's finding at trial regarding Plucinski's payment of the cash value balance of employee Steven Morgan's policy to Morgan is "the antithesis to a 'substantially justified' position." (Docket # 79 at 3–4.)

As I previously found, the evidence in this case supports a finding that Plucinski acted in bad faith when he refused to provide Alberth with the policy documents. (Docket # 68 at 9–10.) Plucinski testified that he did not provide Alberth with the requested documents because Alberth did not "deserve" the documents. (*Id.* at 10.) Plucinski's testimony made clear that he denied Alberth the requested documents because there was bad blood between them. (*Id.* at 10.) Furthermore, the undisputed evidence showed that Plucinski obtained, as a perk of employment, life insurance for certain key employees, including Alberth and that the policies had cash value options. (*Id.* at 6.) And the evidence at trial showed that Plucinski intended the employees to own the cash value—a fact most strongly evidenced by Plucinski's own conduct of returning the balance of the cash value of employee Morgan's policy after using the money to pay back a loan Morgan owed. (*Id.*) Accordingly, I find that

6

these three factors on whether defendants' position was substantially justified weigh in favor of an award of attorney's fees to Alberth.

The fourth factor addresses the amount of benefit conferred on members of the pension plan as a whole, which informs the fifth factor—the evaluation of the merits of the plaintiff's case. *See Bittner*, 728 F.2d at 829. Because this case involved an individual's dispute, the fourth factor has limited value to the analysis. *See Raybourne*, 700 F.3d at 1090. However, because Alberth was ultimately successful in this case, perhaps the defendants will provide requested documents and timely pay out claims from other employees with vested life insurance policies, thus benefiting other plan members. For these reasons, I find the fourth and fifth factors weigh slightly in Alberth's favor.

The remaining factors—factor two (the ability of the offending party to pay) and factor three (an award's ability to deter)—are closely related, as "the deterrent effect of an award would be blunted if it were not paid by the culpable parties." *Bittner*, 728 F.2d at 829. Again, factor two addresses whether the culpable party itself will actually pay the award, or whether the award will simply be passed on to the innocent plan beneficiaries. *Id.*; *see also Raybourne*, 700 F.3d at 1090 ("The second factor, the court determined, weighed in favor of an award of fees. Cigna is well-situated to pay the fees, and the award will not deplete Plan assets.").

It is difficult to properly evaluate this factor because neither party presents evidence of either Plucinski's or Southern Lakes' personal ability to pay the fee award. The defendants argue that this factor weighs in their favor because Southern Lakes is a small plumbing and heating company with few financial resources. (Docket # 77 at 3.) Alberth counters that absent any evidence that the defendants themselves are unable to pay, the

7

claim has no basis. (Docket # 79 at 4.) Clearly Southern Lakes is not a large corporation. It is a smaller company with, at the most, 50 employees. (Docket # 42-10 at 8.) Because I am not confident that the award of attorney's fees will not fall on the innocent employees of Southern Lakes, I find that this factor does not weigh in favor of a fee award.

Furthermore, I am not convinced that an attorney's fees award would act as a deterrent. Defendants argue that they have already been penalized through Alberth's award of $8,700.00 in statutory penalties and that this award already deters others from similar conduct. (Docket # 77 at 3.) Alberth counters that the $8,700.00 statutory penalty was nothing more than a "slap on the wrist" compared to the fees Alberth had to incur litigating this case. (Docket # 79 at 4.) Neither of these arguments is persuasive. Rather, I find that because the parties' arrangement in this case was fairly unique, an award of fees would not serve to put other plan administrators on notice to act in conformance with the statute. For these reasons, factors two and three weigh against an award.

Even so, after weighing all of these factors, I find that an award of attorney's fees is warranted in this case. Weighing most heavily in favor of an award is Plucinski's bad faith, evidenced throughout the course of this litigation. Again, Plucinski specifically testified that when Alberth left Southern Lakes, he did not "deserve" the documents he requested. (Docket # 68 at 10.) Plucinski believed Alberth took proprietary information from his company and he was angry. (*Id.*) Plucinski saw Alberth as his competition, and as he testified, he does not assist his competition. (*Id.*) Conversely, Plucinski was willing to pay out the cash value of Morgan's life insurance policy—an employee who left Southern Lakes on good terms with Plucinski and who Plucinski considers a friend to this day. (*Id.* at 3–4.)

8

Although it is entirely unclear who will ultimately shoulder the burden of the fee award (the defendants or Southern Lake's innocent employees), I have no evidence to suggest that the defendants are unable to personally shoulder the award. But Plucinski's contumacious behavior during the entire course of this litigation (including prior to filing suit) unnecessarily protracted the dispute and therefore calls for an award of attorney's fees.

2.  *Calculating Reasonable Attorney's Fees*

Alberth requests $62,775.00 in attorney's fees. The defendants counter that this amount is unreasonable because: (1) the amount of fees far exceeds the cash value of the policy; (2) Attorney Olson's $450.00/hour rate is not in line with prevailing market rates; (3) Alberth's counsel relies on cluster billing; (4) Alberth requests attorney's fees for administrative, clerical, or secretarial tasks; (5) Alberth denied reasonable settlement offers, thus increasing the fees in this case; and (6) Alberth is not entitled to the $514.74 he requests for computer research. (Docket # 77.)

To determine the amount of reasonable attorney's fees, I begin with the "lodestar"; that is, the product of an attorney's reasonable hourly rate and the number of hours reasonably expended. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* Then, the "lodestar" amount can be adjusted based on a variety of factors, including the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983).

I will begin, therefore, with Alberth's counsel's hourly rate. Generally, a reasonable hourly rate for an attorney is based on what the attorney charges and receives in the market from paying clients for the same type of work. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). Alberth bears the burden of producing satisfactory evidence that

the hourly rate is reasonable and in line with those prevailing in the community. *Id.* There is no dispute that Attorney Olson is an experienced attorney, with 32 years of experience and a practice devoted specifically to employment law and employee rights litigation. (Declaration of Alan Olson ¶ 4, Docket # 73.) Although it appears Attorney Olson maintains a predominantly contingent fee practice, he charges clients who choose to pay him on an hourly basis $450.00 per hour. (Declaration of Alan Olson ¶ 14, Ex. F, Docket # 80-6.) Alberth also submits the declaration of retired Dane County Circuit Court Judge Mark Frankel, who avers that in addition to being a judge, he spent 14 years in private and corporate law practice and through the course of his work, regularly analyzed attorney fee issues including hourly rates charged. (Declaration of Mark Frankel, ¶¶ 2, 4–5, Docket # 80-5.) Judge Frankel avers that Attorney Olson's hourly rate of $450 is reasonable based on his experience, the geographical area, and what other similarly situated attorneys charge. (*Id.* ¶ 6.)

Although neither party cites it, the United States Consumer Law Attorney Fee Survey Report is a publication commonly cited in support of the average hourly rate of attorneys based on practice area, years of experience, and region. *See, e.g.*, *Suleski v. Bryant Lafayette & Assocs.*, No. 09-C-960, 2010 WL 1904968, at *3 (E.D. Wis. May 10, 2010); *Moreland v. Dorsey Thornton & Assocs. L.L.C.,* No. 10-CV-867, 2011 WL 1980282, at *3 (E.D. Wis. May 20, 2011); *Spuhler v. State Collection Servs., Inc.*, No. 16-CV-1149, 2019 WL 2183803, at *2 (E.D. Wis. May 21, 2019). According to the most recent Fee Survey (2017-2018), the median hourly rate for attorneys practicing consumer law in the Milwaukee area with 31-35 years of experience is $438.00. www.nclc.org/issues/litigation-tools.html (last

visited June 23, 2021). Thus, I find that Alberth has demonstrated that Attorney Olson's hourly rate of $450 is reasonable and in line with those prevailing in the community.

Next, the defendants argue that the number of hours expended was not reasonable. Attorney Olson spent 139.50 hours litigating this case. (Declaration of Alan Olson ¶ 13, Docket # 73 and Declaration of Alan Olson ¶ 15, Docket # 80.) The defendants argue that Alberth impermissibly relied on cluster billing and requests attorney's fees for administrative, clerical, or secretarial tasks. As to block billing, I generally agree that block billing is not best practice for attorneys. It makes it very difficult for either a client or the court to discern whether a reasonable amount of time was spent on each task. *See Sphuler*, 2019 WL 2183803, at *4. However, in this case, I do not find counsel's block billing so egregious as to warrant a reduction in hours. Even the largest entries, though block billed, generally represent related tasks, such as the entry spanning November 12-15, 2019 for 25 hours spent conducting legal research, drafting the summary judgment brief and statement of facts, drafting the motion and declarations, and discussing the brief with the client. (Declaration of Alan Olson ¶ 13, Docket # 73.) In all, counsel spent approximately 140 hours litigating this case over a two-and-a-half-year period. That number is not unreasonable.

However, the defendants also take issue with Attorney Olson billing for administrative work. Generally, tasks such as opening a file, making entries in the system, creating a client file, checking filing information, preparing correspondence to the process server, or updating the service chart are administrative tasks for which the attorney is not entitled to fees. *Walker v. United Financial Service*, No. 10-C-180, 2010 WL 4942008, *2 (E.D. Wis. Nov. 30, 2010). Attorney Olson does bill for certain tasks that are undoubtedly

11

administrative, such as the entry on April 11, 2019 for .25 for "ECF Aff. of Service." (Declaration of Alan Olson ¶ 13, Docket # 73.) I, will, therefore, reduce the fee award by 8.75 hours to account for administrative tasks. (*See* entries on 1/8-1/10-19; 1/25/19; 4/11/19; 9/11/19; 10/7/19; 11/9/20; 12/28/20.) Thus, I find the lodestar amount to be $58,837.50.00 (130.75 hours x $450/hour).

Although there is a "strong presumption that the lodestar represents the reasonable fee," *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal citation omitted), once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained, *Hensley*, 461 U.S. at 430 n.3, 436. The defendants do not specifically address the *Hensley* factors; rather, they argue that the fee should be reduced because the amount is significantly greater than the $32,048.81 cash value of the policy awarded and because Alberth denied reasonable settlement offers, which vastly increased the attorney's fees. (Docket # 77 at 5–6, 10.)

I find neither argument persuasive. As to proportionality, while the Seventh Circuit has acknowledged that some of its cases "have expressed concern where attorney's fees overshadowed the damages awarded," the court also noted that in those cases, something else was amiss in the case making the award unreasonable, such as the number of hours billed being inconsistent with the relative simplicity of the case. *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). Thus, while an attorney fee award vastly out of proportion with damages may warrant greater scrutiny, the court has specifically rejected the "'notion that the fees must be calculated proportionally to damages.'" *Id.* (quoting *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir. 1994)).

I do not find the disparity between the fees and damages significant enough to warrant further scrutiny. Again, the total hours spent litigating this case was reasonable and Alberth obtained a great deal of success on the merits. Furthermore, the damages are not quite as out of portion as the defendants assert—while the cash value of the policy awarded was $32,048.81, Alberth's total damages award was actually $43,527.80.

Regarding the settlement demands, I disagree that Alberth rejected "substantial" settlement offers in this case. The defendants assert that in September 2020, they offered to transfer the policy to Alberth and in October 2020, they offered to pay Alberth the entire cash value of the policy. (Docket # 77 at 10.) They reason that because Alberth was ultimately awarded the cash value of the policy, had he taken the September or October 2020 offers, he could have saved $16,000.00 in unnecessary legal fees. (Docket # 77 at 10.) The defendants' reasoning is misguided. Under this logic, had the defendants simply paid out the value of the policy when it was requested, the entire litigation could have been avoided. But Plucinski, motivated by anger towards Alberth, failed to provide him requested documents in violation of the statute as well as the cash value of the policy. The potential statutory penalty was significant, and Alberth was ultimately awarded $8,700.00 in statutory penalties. Furthermore, by the time defendants made the October 2020 settlement offer, Alberth already had sunk $50,000.00 in attorney's fees. (Docket # 79 at 2.) It is unreasonable to believe that Alberth would have simply accepted the cash value of the policy at that juncture of the litigation. I decline to reduce the attorney's fees on this basis.

Finally, the defendants contest Alberth's request for $514.74 for on-line computer research. (Docket # 77 at 11.) Charging for computer research is again, not best practice. As one court in this circuit noted, "the pricing of online legal research is often subject to

discounts, many firms follow the better practice of treating the expense of online legal research as an aspect of overhead that is not billed to clients. So, for many firms, the hourly rate already reflects the expense of online research." *Mowery v. Metro. Life Ins. Co.*, No. 16-CV-516-JDP, 2017 WL 3575857, at *3 (W.D. Wis. Aug. 18, 2017). In *Mowery*, however, there was no indication that the client paid all of the invoices. *Id.* at *3. In this case, because Attorney Olson avers that his client has paid all out-of-pocket expenses pursuant to their fee agreement, including computerized research, (Declaration of Alan Olson ¶ 14, Docket # 80; Declaration of Alan Olson ¶ 15, Ex. A, Docket # 73), I will award the $514.74 fee for computer research.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for attorney's fees (Docket # 71) is **GRANTED**. Alberth is awarded attorney's fees and expenses in the amount of $59,352.24.

Dated at Milwaukee, Wisconsin this 2nd day of July, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge